**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:25-CR-00393 (RP) |
| | ) | |
| THOMAS AUSTRIA CROUSE | ) | |

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S MOTION TO DISMISS SUPERSEDING INDICTMENT**

Now comes the United States of America, by and through the United States Attorney for the Western District of Texas, and herein submits its Response to Defendant's Motion to Dismiss Superseding Indictment, and states:

Defendant raises three issues in his motion. First, the Defendant claims that the Defendant's threats charged in Counts One through Five in violation of 18 U.S.C. §875(c) and his harassment in Counts Six and Seven in violation of 18 U.S.C. §2261a(2) were not in fact true threats or intentional harassment, but the defendant merely making "statements of public concern" "entitled to special protection under the First Amendment." (ECF 43 at 1). Defendant's second issue is that the statute that the Defendant is charged with in the first five counts of the Superseding Indictment (ECF 28), Title 18, United States Code, Section 875(c), is void for vagueness and overbroad under the Fifth Amendment Due Process clause in that it provides no warning of what statements qualify as criminal threats. *Id.* Defendant's third issue is that Counts Six and Seven are unconstitutional as applied. None of the Defendant's challenges have any merit.

**STATEMENT OF CASE**

On September 2, 2025, a grand jury sitting in Austin charged the Defendant in a two-count indictment with for threatening a White House staffer in violation 18 U.S.C. §875(c), making

threatening interstate communications. On October 7, 2025, the grand jury returned a seven-count superseding indictment against the Defendant adding additional threat charges in violation of 18 U.S.C. §875(c) for a total of five counts of Interstate Threatening Communications, Counts One through Five, and two counts of Cyberstalking in violation of 18 U.S.C. §2261A(2), Counts Six and Seven, against a total of five public servants and elected officials, their families and/or their staffs.

## ARGUMENT

**I.    There is no basis in this case to dismiss counts one through five pursuant to rule 12 as the indictment both sufficiently charges the elements of the crimes and lists the true threats made by the defendant to murder public officials and if proven true would be true threats unprotected by the first amendment.**

The Defendant's argument that his statements were merely complaints to public officials about various policies and legislation is shattered when you view his actual words blatantly, directly, and specifically threatening the lives of these public officials and their families and harassing these public servants and their staffs. Except for two vague references, handing a non-specific executive order in Count One and a bill contained in the voicemail containing the threat in Count Five, there is no mention of any official government actions. However, even if there were more substantive comments on legislation, they would not absolve the Defendant's intentional, knowing, and reckless true threats to murder and assault these public servants or their families, or the Defendant's intentional and knowing harassment of these public servants and their staffs. There is no credible legal basis for the Defendant to argue that his threatening and/or harassing statements cannot as a matter of law be sufficient to convict the Defendant under each of the respective charges.

A.  **Standard Required to Dismiss an Indictment under Fed. R. Crim. P. 12**

Whether a district court can dismiss an indictment under Rule 12 "is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." *United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005) (cleaned up), *abrogated on other grounds by Abramski v. United States*, 573 U.S. 169, 191 (2014). "If a question of law is involved, then consideration of the motion is generally proper." *Id.* And a court "may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *Id.* at 324 n.6.

But a district court can dismiss under Rule 12 only "if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense" raised by that motion. *United States v. Covington*, 395 U.S. 57, 60 (1969). "If contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.). And "[t]here is no authority under Rule 12 … to dismiss on the basis of a sufficiency-of-the evidence defense which raises factual questions embraced in the general issue." *United States v. Mann*, 517 F.2d 259, 267 (5th Cir. 1975) (cleaned up).

"No circuit" allows dismissal under Rule 12 on an "incomplete or disputed factual record." *United States v. Rodríguez-Rivera*, 918 F.3d 32, 35 (1st Cir. 2019). Nor does Rule 12 empower the district court to require the government to preview its entire trial presentation. *See United States v. Rafoi*, 60 F.4th 982, 994 (5th Cir. 2023) (explaining that a defendant may not challenge under Rule 12 a facially sufficient indictment as not supported by adequate evidence); *accord Rodríguez-*

*Rivera*, 918 F.3d at 35; *Wedd*, 993 F.3d at 121. That sort of requirement "could effectively force a summary judgment-like motion on the government." *Wedd*, 993 F.3d at 121 (cleaned up). And "federal criminal procedure does not provide for a pre-trial determination of sufficiency of the evidence." *United States v. Sholley-Gonzalez*, 996 F.3d 887, 893 (8th Cir. 2021) (cleaned up).

The reasons for this approach are several, as then-Judge Gorsuch has explained. *Pope*, 613 F.3d at 1259-60. Chief among them is the risk that the district court will usurp the role of the jury, whose members are "charged with determining the general issue of a defendant's guilt or innocence." *Id.* at 1259. Even in cases where the court's determination of the merits of a legal defense is appropriate, "evidence adduced at trial can provide a 'more certain framework' for its analysis[,]" especially considering the uncertainty of "what evidence will and won't be admissible" at trial. *Id.* Conducting a pretrial hearing at which the government would have to preview all its trial evidence—or risk dismissal—would waste judicial resources, since the district court would likely "repeat the exercise with largely the same evidence a short time later at the trial itself." *Id.* And forcing the government to preview its trial evidence would permit "an end-run around the limited discovery rules governing criminal prosecutions." *Id.* "Rule 12 is not a parallel to civil summary judgment procedures." Pope, 613 F.3d at 1261. Instead, Rule 12 "helps draw and police [the] distinction between civil and criminal procedure." Id. at 1260.

"An indictment is legally sufficient if (1) each count contains the essential elements of the offense charged, (2) the elements are described with particularity, and (3) the charge is specific enough to protect the defendant against a subsequent prosecution for the same offense." *United States v. Cooper*, 714 F.3d 873, 877 (5th Cir. 2013). Counts One through Five in the superseding indictment alleges every essential element of the offense—that the Defendant transmitted in interstate commerce a communication containing a threat to injure the person of another, *see* 18

U.S.C. § 875(c), and did so with the requisite mens rea, *see Counterman*, 600 U.S. 66, 79 (2023). And each count quoted key portions of each statement to provide particularized notice that will prevent subsequent prosecution for the same statements.

The plain text of Section 875(c) states that the statute applies to "any threat to injure the person of another." "It is settled that the [First Amendment of] Constitution does not protect true threats." *Elonis v. United States*, 135 S. Ct. 2001, 2016 (2015). "True threats are 'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence.'" *Counterman*, 600 U.S. at 74 (quoting *Virginia v. Black*, 538 U.S. at 359). The modifier "true" distinguishes true threats from "jests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility that violence will follow." *Id.* Whether a statement is a true threat depends not on the speaker's mental state but "on what the statement conveys to the person on the receiving end." *United States v. Jubert*, 139 F.4th at 490. If "an objectively reasonable person would interpret the speech as a serious expression of an intent to cause a present or future harm," then a statement is a true threat. *Id.* When a true threat is the basis for a criminal prosecution, the government must also show that the speaker was aware of and recklessly disregarded its threatening nature. *See Counterman*, 600 U.S. at 79; *Jubert*, 139 F.4th at 491. When a statement meets these requirements, it is outside the bounds of expression protected by the First Amendment and punishable as a crime. *Counterman*, 600 U.S. at 69; *Jubert*, 139 F.4th at 491. Even if some "charged political speech" falls into a "gray area," *Counterman v. Colorado*, 600 U.S. at 88 (Sotomayor, J., concurring), the Supreme Court has explained that requiring a mental state of at least recklessness "offers enough breathing space for protected speech without sacrificing too many of the benefits of enforcing laws against true threats," *id.* at 82 (majority opinion) (cleaned up).

The Fifth Circuit has held that a jury should resolve whether an objectively reasonable person would interpret speech as a serious expression of intent to cause harm. *See, e.g.*, *United States v. Daughenbaugh*, 49 F.3d 171, 173 (5th Cir. 1995) ("Guided by instructions . . . removing protected speech from the definition of 'threat,' the jury is to determine the nature of the subject communication.") (cleaned up); *United States v. Coalwell*, No. 20-50869, 2021 WL 4768286, at *1 (5th Cir. Oct. 12, 2021) ("Whether the language in a communication constitutes a 'threat' is a factual issue for the jury to decide[.]"); *cf. Jubert*, 139 F.4th at 439 (upholding a district court's decision to defer until trial a determination of whether statements were true threats). Determining a defendant's mental state when issuing a threat is likewise "up to the jury." *United States v. Morales*, 272 F.3d 284, 288 (5ᵗʰ Cir. 2001).

The Fifth Circuit in *United States v. Perez* stated: "True threats are unprotected because they have relatively low value and because restricting them "protect[s] individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur." 43 F.4th 437, 443-444 (5th Cir. 2022) *citing R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992).

The Fifth Circuit has held that the intended target of a threat does not need to be aware of the threat. *See United States v. Morales*, 272 F.3d 284, 288 (5th Cir. 2001). "The speaker need not actually intend to carry out the threat"; rather, "a prohibition on true threats 'protect[s] individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.'" *Id.* at 359–60. All of the Defendant's conduct and words as set forth in the Indictment were exactly what the First Amendment does not protect: "advocacy of the use of force or of law violation except where such

advocacy is directed to … producing imminent lawless action." *Id.* at 359 (*quoting Brandenburg*

*v. Ohio,* 395 U.S. 444, 447 (1969) *(per curiam)).*

To prove a violation of Title 18, United States Code, Section 875(c), according to the

Fifth Circuit Pattern Jury Instruction, 2.39, the jury should be instructed that

> Title 18, United States Code, Section 875(c), makes it a crime for anyone to send or transmit any threat to injure the person of another in interstate or foreign commerce.
>
> For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> *First*: That the defendant knowingly sent or transmitted a communication;
>
> *Second:* the communication contained a threat to injure the person of another, as charged;
>
> *Third*: That the communication was sent in interstate commerce.
>
> A "threat" is a serious statement expressing an intent to injure any person, which under the circumstances would cause apprehension in a reasonable person, as distinguished from mere idle or careless talk, exaggeration, or something said in a joking manner.[1]

Fifth Circuit Pattern Instruction-Criminal (2024), 2.39 [as modified for Section 875(c)].

Based on the Supreme Court's requirement that the Government must also prove the

defendant's subjective intent, *Counterman,*600 U.S. at 79, the Government submits the jury

should be instructed on this additional element and definition:

> That the defendant sent or transmitted that communication for the purpose of issuing a threat or with knowledge the communication will be

---

[1] *Virginia v. Black,* 538 U.S. 343, 359 (2003); *Watts v. United States,*394 U.S. 705, 708 (1969).

viewed as a threat or recklessly disregarding a substantial risk that his communication would be understood as a threat. [2]

A person acts recklessly, when he "consciously disregarded a substantial risk that his communications would be viewed as threatening violence."[3]

The indictment clearly alleges the necessary fact to meet each and every element of Title 18, United States Code, Section 875(c).

### B.  Any Question Of Fact Should Be Decided By The Jury

There is nothing remotely protected by the First Amendment in the Defendant's statements.  Dismissal under Rule 12 is improper as a matter of law, because at minimum, there is a triable factual dispute as to each count because a juror could interpret these statements as something that an objectively reasonable person would view as a serious threat to harm another and the jury must determine if the Defendant's subjective intent rises at least to the level of recklessness.

### Count One

As charged in Count One in violation of Section 875(c), on August 25, 2025, the Defendant stated:

> Hey, if this is fucking Will Shwarf, Will Sharf, whatever man, the piece of fucking shit that's handing Trump, those Executive orders. If this is you, I'm going to find you, and I'm going to cut your fucking head off, bitch. I'm going to kill you, and then I'm going to kill your fucking family, bitch.

Other than a glancing reference to handing the President executive orders, there is nothing remotely political or permissible under the First Amendment to the Defendant's threats to murder the victim let alone making threats to murder the victim's family. The Defendant concedes that

---

[2] *Counterman v. Colorado*, 600 U.S. 66, 69 (2023);  *Elonis v. United* States, 575 U.S. 723, 737, 740 (2015);  *United States v. Knight*, 2024 WL 909586, *1-*2 (5th Cir. Mar.4, 2024).

[3] *Counterman*, 600 U.S. at 69

true threats are "serious expressions" to "commit an act of unlawful violence." ECF 43 at 6. *Counterman v. Colorado*, 600 U.S. at 73 (quoting *Black*, 538 U.S. at 359). All of the Defendant's arguments he was expressing his opinion about "passage of the Big Beautiful Bill and anti-immigration actions," ECF 43 at 7, or that he was "lodging his objections to pending legislation," ECF 43 at 14, has no basis from the plain reading of his threat or the record, thus requiring fact-finding by jury and taking the issue out of the Rule 12 purely legal sufficiency inquiry. It is also important to remember that the Defendant made this threat about six weeks after the United States Secret Service confronted and warned the Defendant about making further threats.

Defendant's argument that this was somehow a conditional threat because it begins with, "If this is Will Scharf,..." is also meritless. ECF 43 at 10. Plainly, this is a factual dispute the jury should decide and not a purely legal matter subject to a Rule 12 dismissal motion. Clearly, the only thing the Defendant is questioning is whether he was calling was Scharf's voicemail. The remainder of the voicemail makes it obvious that the Defendant is threatening to hunt down and murder Scharf and his family whether or not this was Scharf's phone. This statement was still a true threat even if this was not Scharf's voicemail. *See United States v. Myers*, 104 F.3d 76, 78-79 (5th Cir. 1997). In *Myers*, the defendant issued a conditional threat: He told a congressional aide he was "talking about body bags" *if* nothing was done to help his sick wife. *Id.* at 78. The Fifth Circuit held the evidence "more than sufficient" to show that these statements met the test for a true threat. *Id.* at 79. The Fifth Circuit's decision in *Myers* disproves his notion that an objectively reasonable person cannot view any conditional statement as expressing a serious intent to cause harm. 104 F.3d at 78-79. The statement "If I see you, I will kill you," is expressly conditional, but a reasonable person with a chance of seeing the speaker would regard it as a threat. While he cites the Fifth Circuit's unpublished opinion in *United States v. O'Dwyer* for the premise there may be

times where statements are too hypothetical and conditional to not be true threats as a matter of law based on highly contingent events that that the defendant was trying to avoid: running out of medication and then having an adverse reaction, ECF 43 at 8, *O'Dwyer* is clearly distinguishable than the unconditional and non-hypothetical threats the Defendant made here. 443 F. App'x 18, 19 (5th Cir. 2011). In addition, as stated above, the statute does not require the intended victim be the direct recipient of the threat or even be aware that the threat was made. *Morales*, 272 F.3d at 288 ("[t]he language of § 875(c) does not require that the threat be made directly to the intended target."). It is therefore irrelevant as to whether the Defendant knew or believed he had reached the correct voicemail of his intended victim; the inquiry instead is on the language used and its intended effect.

Further, while the Defendant ignores the alarm of the victim in determining if this was a true threat suitable for Rule 12 purely legal resolution as the Fifth Circuit does has repeatedly held that fearful reactions are probative of whether an objectively reasonable person would interpret a statement as a threat. *E.g.*, *United States v. Jubert*, 139 F.4th at 491; *United States v. Coalwell*, No. 20-50869, 2021 WL 4768286, at *1; *United States v. Morales*, 272 F.3d at 288; *Daughenbaugh*, 49 F.3d at 174. After all, true threats have no First Amendment protection not just "because they have relatively low value" but also "because restricting them 'protect[s] individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur." *United States v. Perez*, 43 F.4th 437, 443-44 (5th Cir. 2022) (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992)).

The Fifth Circuit has held statements with much less specific threats than the Defendant's need to be presented to the jury to determine if the communication was a true threat. *See e.g., United States v. Jubert*, 139 F.4th at 491; *Daughenbaugh*, 49 F.3d at 173-74.

**Count Two**

After the FBI confronted the Defendant on August 26, 2025, for his August 25, 2025 threat against Scharf in Count One, that same day, the Defendant called Scharf back and left the following threat "Dude, telling the fucking FBI, you's a bitch. Let me catch you in public; I'll knock you the fuck out, bitch." The plain reading of this statement is a true threat. Contrary to Defendant's claim this is some sort of political statement, there is nothing political, conditional, or hyperbolic contained in this statement. It is a blatant true threat to assault Scharf in retaliation for Scharf contacting the FBI. His truncated quotation from *Watts,* ECF. 43 at 12, leaves off that the statement there "was expressly made conditional upon an event—induction into the Armed Forces—*which [the defendant] vowed would never occur*." 394 U.S. at 707 (emphasis added). Even if this threat could somehow be couched as "conditional," that does not necessarily mean it was not a true threat. *Myers,* 43 F.4th 437, 443-44. Neither his reliance on *O'Dwyer* or *Watts*, ECF. 43 at 13, can turn Defendant's true threat to assault the victim in retaliation for reporting his previous true threat to the FBI and the fear that engendered into a basis to grant a Rule 12 motion to dismiss as a purely legal matter.  Again, "[t]rue threats are 'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence.'" *Counterman*, 600 U.S. at 74 (quoting *Virginia v. Black*, 538 U.S. at 359).

**Count Three**

As charged in Count Three in violation of Section 875(c), the Defendant stated: "you're gonna die by my hand **I'm gonna murder you** and your whole fucking family." (Emphasis in original). To claim this threat is a political protest against immigration policy, ECF 43 at 14, defies credulity. There is no political discussion in what the Defendant wrote. There is nothing conditional or hypothetical about this. The Defendant cites to is no case that supports his clam that

threatening to murder a public official let alone family members is entitled to any First Amendment protection. The Defendant's statement, without equivocation, was a threat to "commit an act of unlawful violence." *Counterman*, 600 U.S. at 74 (quoting *Virginia v. Black*, 538 U.S. at 359). While there is little doubt this statement is a true threat, this remains a factual dispute left to the jury to determine if, "an objectively reasonable person would interpret the speech as a serious expression of an intent to cause a present or future harm." *Jubert*, 139 F.4th at 490 (cleaned up); *Daughenbaugh*, 49 F.3d at 173; *Coalwell*, 2021WL 4768286, at *1.

## Counts Four and Five

The Defendant is charged with violating Section 875(c) in Count Four for when he left a voicemail for Senator Cramer and his staff where the told the Senator on or about July 3, 2025, in part, to "Put a fucking gun in your mouth and kill yourself, you stupid bitch, or I'll fucking find you and I'll fucking kill you myself." The Defendant is charged in Count Five with violating Section 875(c) for when he left a voicemail for Senator Budd and his staff where the told the Senator on or about July 18, 2025, in part, "If you don't kill yourself, I'll find you and I'll fucking kill you stupid bitch." Defendant tries to argue that theses statement as a matter of law are not true threats. ECF. 43 at 17-18. While each of these threats mention making America great again and the latter threat mentions an unnamed bill, the follow-on from the Defendant's statement is that the respective Senator should kill himself to make America great again. None of this takes away from that the First Amendment, even when it could remotely be argued there is some political context, still forbids statements that when taken in context convey "a real possibility that violence will follow." *Counterman*, 600 U.S. at 74 (quoting *Virginia v. Black*, 538 U.S. at 359). If "an objectively reasonable person would interpret the speech as a serious expression of an intent to cause a present or future harm," then a statement is a true threat. *United States v. Jubert*, 139 F.4th

at 490. The recipients of the threat were concerned that the caller, who blocked their Caller ID, would attack the respective Senator or their staffs. The Defendant's argument that these statements were conditional and therefore not subject to being true threats is baseless. ECF 43 at 18. The "conditional" part of the Defendant's threat is the respective Senator was required to kill himself. The Defendant said if the Senator did not kill himself, which no rational person would do, then the **Defendant** said he would find them and kill them.

### There Is No Basis to Dismiss Counts One Through Five Pursuant to Rule 12

None of these threats are subject to Rule 12 dismissal. Each count of the first five counts of the indictments list and charge all of the required elements of Section 875(c), they list the specific threats that if the jury believes beyond a reasonable doubt would constitute a true threat not protected by the First Amendment, and each count is pled with sufficient specificity to allow the Defendant to plead Double Jeopardy in a subsequent prosecution. See *Cooper*, 714 F.3d at 877. All of the "facts" and arguments the Defendant raise to try to justify these counts should be dismissed as legally insufficient under Rule 12 are in fact disputed facts demonstrating Counts One through Five are subject to Rule 12 dismissal solely on legal questions. A court "may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *Id.* at 324 n.6. But a district court can dismiss under Rule 12 only "if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense" raised by that motion. *United States v. Covington*, 395 U.S. 57, 60 (1969).

For all these counts, dismissal would prevent the jury from hearing the fearful reaction of those who received these threats and harassment. These fearful reactions are "probative" of whether an objectively reasonable person would interpret a statement as a threat. *Coalwell*, 2021

WL 4768286, at *1; *Daughenbaugh*, 49 F.3d at 174; *see also Jubert*, 139 F.4th at 491 (ex-plaining that while "[f]ear, standing alone, may not be dispositive," fear can also be the "predictable result of deliberate conduct"). Furthermore, a pretrial determination regarding the Defendant's requisite mental state-- that is, whether he was subjectively aware of the threatening nature of his statements, *Counterman*, 600 U.S. at 79; *Jubert*, 139 F.4th at 491, is also in dispute factually. After law enforcement agents told him his statements constituted a federal crime, the Defendant persisted in issuing similar statements from which a jury can infer that the defendant knowingly or recklessly disregarded the threatening nature of his statements. *See United States v. Elonis*, 841 F.3d 589, 599-601 (3d Cir. 2016). For example, in *Elonis*, the court held that no rational juror could have found that the defendant was unaware of the threatening nature of his online posts when the recipients of similar posts had told him that the earlier posts alarmed them. *Id.*

In regard to Defendant's arguments that his comments were hyperbolic, ECF. 43 at 10, 13, the Fifth Circuit has declined to rule that statements were not true threats as a matter of law even when context could be read to undermine the seriousness of the threat. For example, in *Perez*, the Fifth Circuit upheld the jury's finding that a reasonable person could take the defendant's statements about COVID-19 exposure seriously even though they were delivered alongside cry-laughing and winking emojis. 43 F.4th at 443. The Defendant ignores half of the relevant inquiry. "The inquiry is twofold: whether a reasonable person would perceive the statement as threatening, and whether the speaker was subjectively aware of its threatening nature." *Jubert*, 139 F.4th at 491. Again, these are factual issues left to jury and not a basis to grant a Rule 12 dismissal on a purely legal issue.

Similarly, Defendant's examples of statements made by politicians, ECF. 43 at 19-20, neither excuses the Defendant making his true threats to specific people nor does it support his

premise that this case can be ruled upon as a purely legal matter under Rule 12. To the contrary, these are arguments, if admissible, that must go before jury to determine the Defendant's mental state and if he acted recklessly, which is again solely a question left to the jury. The Defendant's threats cannot be decided as matter of law by this court because the record is incomplete and clearly there are disputed facts on indicted crimes with sufficiently charged elements and alleged threats that if proved in court beyond a reasonable are sufficient to prove the Defendant's guilt.

None of the Fifth Circuit cases the defense relied on, establish that this Court has somehow bound itself to a contrary rule. In *Flores*, the Rule 12 motion hinged on a purely legal question about the interaction between two statutes: whether an alien who entered the country illegally and later qualified for temporary protected status, 8 U.S.C. § 1254a, was "illegally or unlawfully in the United States," 18 U.S.C. § 922(g)(5)(A). *Flores*, 404 F.3d at 324 & n.5, 326. Nor does the Fifth Circuit's unpublished decision in *United States v. O'Dwyer*, 443 F. App'x 18 (5th Cir. 2011), offer persuasive support for a different approach. No case cited in that decision supports the notion that a district court deciding a Rule 12 motion should try to forecast what a reasonable jury could find based on a full trial record. *See id.* at 20 (citing *Daughenbaugh*, 49 F.3d 171, and *Morales*, 272 F.3d 284).

In *Daughenbaugh*, and again in *Morales*, the Fifth Circuit applied the "reasonable jury" standard because it was reviewing district courts' decisions under Federal Rule of Criminal Procedure 29 not to grant a judgment of acquittal *after* trial. *See Daughenbaugh*, 49 F.3d at 173; *Morales*, 272 F.3d at 287. And even if there were some support for applying a "reasonable jury" standard to a pretrial record, *O'Dwyer* involved a much different statement: one the Fifth Circuit has characterized as "vague speculation about becoming homicidal," *Jubert*, 139 F.4th at 491. The Defendant's statements were not "vague speculation"; he threatened to murder public officials and

their families. In *Morales*, the defendant did not explain when he would attack beyond the valediction "SEE U IN A COUPLE OF MONTHS." 272 F.3d at 286. Yet the Fifth Circuit still held that "a reasonable juror could find all the facts necessary to make Morales's communication a 'true threat.'" *Id.* at 288.  Furthermore, the Defendant cites cases in which courts resolved an issue related to true threats as a matter of law, but none of those cases offers persuasive support for the result he wants here: using Rule 12 to dismiss an indictment on a disputed pretrial record. Several of those cases involved a court's assessment of statements *after* the factual elaboration of a full trial. *See Watts v. United States*, 394 U.S. 705, 705-07 (1969)(reviewing ruling on motion for acquittal); *United States v. Lincoln*, 403 F.3d 703, 705 (9th Cir. 2005) (same). And the district court cases the Defendant offers do not mention, let alone discuss, the Federal Rule of Criminal Procedure, Rule 12 standard. *See United States v. Cook*, 472 F. Supp. 3d 326 (N.D. Miss. 2020); *United States v. O'Dwyer*, No. 10-34, 2010 WL 2606657 (E.D. La. June 24,2010); *United States v. Baker*, 890 F. Supp. 1375 (E.D. Mich. 1995).

That leaves the Defendant with the Fifth Circuit's unpublished decision in *United States v. O'Dwyer*, 443 F. App'x 18 (5th Cir. 2011). But the Defendant makes no effort to explain how the published decisions *O'Dwyer* cited—both of which affirmed denials of motions for acquittal at trial—support using Rule 12 to forecast from a pretrial record what a jury might find. *See id.* at 20 (citing *Daughenbaugh*, 49 F.3d 171, and *Morales*, 272 F.3d 284). Even under that approach, the Defendant does not explain how his threats to murder these public officials and some of their family members are like the "vague speculation about becoming homicidal" at issue in *O'Dwyer*. *Jubert*, 139 F.4th at 491. Thus, even if *O'Dwyer* should have been resolved pretrial as a matter of law, this case should not be. As the Supreme Court said in *Covington,* a pretrial motion to dismiss is "'capable of determination' if trial of the facts surrounding the commission of the alleged offense

would be of *no assistance* in determining the validity of the defense" raised by that motion. *United States v. Covington*, 395 U.S. 57, 60 (1969)(emphasis added). Because the questions of fact here are disputed, Rule 12 does not authorize pretrial resolution of the viability of the charge.

## II.    Title 18, United States Code, Section 875(c) is neither void for vagueness nor overbroad.

Contrary to the Defendant's argument, ECF. 43 at 20-22, Section 875(c) clearly puts an individual on notice that it is illegal for anyone to transmit threats in interstate or foreign commerce to injure the person of another.  As set forth in the proposed jury instruction, *supra* at 7-8, the statute prohibits the Defendant from (1) knowingly (2) transmitting a true threat with (3) the subjective intent to purposely issue a threat, with knowledge the communication will be viewed as a threat, or recklessly disregarding a substantial risk that his communication would be understood as a threat, (4) in interstate or foreign commerce. Fifth Circuit Pattern Instruction-Criminal (2024), 2.39 as modified by *Counterman v. Colorado*, 600 U.S. 66, 69  (2023). Counts One through Five of the Superseding Indictment each track these same elements and sets forth the Defendant's true threats.

In *Counterman,* the Supreme Court again determined that the First Amendment does not protect a speaker making true threats. *Id.* at 77-78. The Court added that to separate protected speech under the First Amendment with unprotected speech relating to objective requirement of a true threat, a further element needed to be proved:  the Government must show that the speaker had the subjective intent when making the threat to purposely intend his words to be taken as a threat, to knowing others will take his words to be a threat, or to act recklessly by disregarding a substantial risk his words will be viewed as a threat. *Id.* at 70. With the addition of the subjective scienter element in true-threat cases, as set forth both in the Superseding Indictment and the

Government's proposed jury instruction, vagueness concerns have been alleviated in this case. Joining six other justices, Justice Sotomayor concurred in part and in judgement that in that Counterman was prosecuted for stalking involving threatening statements, recklessness was the appropriate scienter standard. 600 U.S. at 84. Justice Sotomayor also reiterated that a true threat is a "statement where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence", *id.* at *93*—exactly what the Defendant did on each of Counts One through Five where he threatened to murder public servants, their families, and/or to assault them.

The Third Circuit recently held, post-*Counterman,* that the Defendant's vagueness challenge against a Section 875(c) prosecution failed. *United States v. Miah*, 120 F.4th 99, 108 (3d Cir. 2024). The Third Circuit held that a conviction under 18 U.S.C. § 875(c) requires proof of both a subjective and an objective component; the subjective component is satisfied if the defendant transmitted a communication for the purpose of issuing a threat or with the knowledge it would be viewed as one. *Id. (citing United States v. Elonis*, 841 F.3d 589, 596 (3d Cir. 2016)). This subjective component alleviates concerns that "a defendant will be convicted for an action that he or she committed by mistake." *Id. (citing United States v. Fullmer*, 584 F.3d 132, 152 (3d Cir. 2009)).

As the Ninth Circuit found,

A conviction under § 875(c) requires the specific intent to threaten, *United States v. Twine,* 853 F.2d 676, 680 (9th Cir.1988), and only true threats may be prohibited, *see Virginia v. Black,* 538 U.S. 343, 359–60, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003). Defendant argues that § 875(c) is void for vagueness because the statute itself neither requires specific intent nor defines true threats. However, rather than making the statute void for vagueness, the narrowing construction provided by the relevant cases actually alleviates possible void-for-vagueness concerns. *See Boos v. Barry,* 485 U.S. 312, 329–30, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988). Furthermore, we are convinced that the statute is not impermissibly

vague. An ordinary citizen can understand what is meant by the terms "threat to kidnap" and "threat to injure," and we are persuaded that the statute provides sufficient standards to allow enforcement in a non-arbitrary manner.

*United States v. Sutcliffe*, 505 F.3d 944, 953–54 (9th Cir. 2007).

To show a statute is constitutionally overbroad, the Defendant has the burden to prove a "realistic danger" that the statute will, in a significant way, unconstitutionally burden parties not before the court. *United States v. Ostrander*, 114 F.4th 1348, 1362 (11th Cir. 2024) *citing Taxpayers for Vincent*, 466 U.S. at 801, 104 S.Ct. 2118.

In *Virginia v. Hicks*, the Supreme Court stated an overbreadth challenge is unusual in that litigants typically lack standing to assert the constitutional rights of others. *Virginia v. Hicks*, 539 U.S. 113, 119–20 (2003). The Supreme Court held that

> To ensure that these costs do not swallow the social benefits of declaring a law "overbroad," we have insisted that a law's application to protected speech be "substantial," not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications, *ibid.,* before applying the "strong medicine" of overbreadth invalidation, *id.,* at 613, 93 S.Ct. 2908.

*Id.* As the Court said in *United States v. Hansen,* the Defendant must prove that the statute is overbroad it must "prohibits a substantial amount of protected speech relative to its plainly legitimate sweep." *United States v. Hansen*, 599 U.S. 762, 770, (2023)(cleaned up). For a court to justify a facial invalidation, the Defendant must prove the unconstitutional applications must be realistic and not fanciful. *Id.* The Defendant must also show the number of unconstitutional applications are "substantially disproportionate to the statute's lawful sweep." *Id.* The first inquiry is what does the statute cover. *Id.* In the Section 875(c) context, the statute only covers interstate communications that are both true threats and that the Defendant made intentionally, knowingly, or recklessly disregarding a substantial risk that the communication be understood as a threat. *See Counterman*, 600 U.S. at 74, 79; *Elonis*, 135 S. Ct. at 2016; *Virginia v. Black*, 538 U.S. at 359.

When a true threat is the basis for a criminal prosecution, the government must also show that the speaker was aware of and recklessly disregarded its threatening nature. *See Counterman*, 600 U.S. at 79; *Jubert*, 139 F.4th at 491. When a statement meets these requirements, it is outside the bounds of expression protected by the First Amendment and punishable as a crime. *Counterman*, 600 U.S. at 69; *Jubert*, 139 F.4th at 491. Even if some "charged political speech" falls into a "gray area," *Counterman v. Colorado*, 600 U.S. at 88 (Sotomayor, J., concurring), the Supreme Court explained that requiring a mental state of at least recklessness "offers enough breathing space for protected speech without sacrificing too many of the benefits of enforcing laws against true threats," *id.* at 82 (majority opinion) (cleaned up).

The Defendant has failed to show Section 875(c) is constitutionally overbroad or vague. The statute protects the public from individuals like the Defendant who knowingly make true threats with the intent to make a threat, knowing his comments will be taken to be a threat, or recklessly disregarding his words will be taken as a threat. The First Amendment does not protect the Defendant when he knowingly makes true threats. The Defendant knowingly made threats to kill and/or assault public officials and some of their family members and did so at the very least by recklessly disregarding a substantial risk that his communication would be understood as a threat, although his threats also support the finding that he purposely and knowingly made there threats to murder and assault public servants. The Defendant's Motion to Dismiss the Superseding Indictment based on First Amendment speech or Fifth Amendment Due Process vagueness and overbreadth grounds are meritless and should be denied.

### III.    Section 2261a(2) is not unconstitutional as applied to the defendant.

The Grand Jury charged the Defendant in Counts Six and Seven of the Superseding Indictment with violating 18 U.S.C. §2261A(2).

To prove a violation of Title 18, United States Code, Section 2261A(2), according to the Fifth Circuit Pattern Jury Instruction, 2.86B, the United States submits that the jury should be instructed:

> Title 18, United States Code, Section 2261A(2) makes it a crime to use the mail or any facility in interstate commerce, including interactive computer services or electronic communication services or systems, with the intent to stalk another person. For you to find the defendant guilty, the government must prove each of the following beyond a reasonable doubt:
>
> *First*: That the defendant used the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce;
>
> *Second*: That the defendant did so with the intent to harass or intimidate another person; and
>
> *Third*: That through the use of the mail, computer interactive service, electronic communication service or system or other facility of interstate or foreign commerce, the defendant engaged in a course of conduct that caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to that person or a member of that person's immediate family.
>
> "Course of conduct" means a pattern of conduct composed of two or more acts, evidencing a continuity of purpose.

The Supreme Court and subsequently the Fifth Circuit has applied the "true threat" test to determine the validity of statutes involving harassment and intimidation as charged in Counts Six and Seven in violation of Section 2261A(2). In *Counterman*, the Supreme Court reviewed Colorado's statute making it unlawful to "[r]epeatedly ... make[ ] any form of communication with another person" in "a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person ... to suffer serious emotional distress." 600 U.S. at 70. The

Court held that true threats are outside the bounds of the First Amendment protections and that the government must prove that the defendant had at least consciously disregarded a substantial risk his communication would be viewed as threatening violence. *Id.* at 69. Where the Supreme Court found fault with the Colorado statute was that the statute only covered the objective true threat that a reasonable person would find the harassing statements threatening. *Id.* at 77-78. The Court's reasoning relates to prohibitions on speech that have the potential to chill, or deter, speech causing a speaker to be unsure about the side of the First Amendment line his speech falls or causing the speaker to worry that the legal system will err, and count permissible speech as impermissible. *Id.* at 75. The Supreme Court held that to take the defendant's harassment out of First Amendment speech protections, the government was required to also prove a reckless subjective intent—that the defendant made the statements consciously disregarding a substantial risk his communication would be viewed as threatening violence. *Id.* Adding the requirement of the subjective intent alleviates this concern in true threat cases that the Colorado harassment fell under. *Id.* at 77-78.

The precise issues raised and arguments made by the Defendant that Section 2261A(2) is unconstitutional as applied to the Defendant, ECF 43 at 24-33, were recently addressed by the Fifth Circuit in *United States v. Jubert*, 139 F.4th 484 (5th Cir. 2025). If the defendant is proven to have committed each element, "the statute brands a defendant a cyber-stalker. *Id.* at 489. The Fifth Circuit stated that while the "First Amendment protects speech that provokes, disturbs, or even offends," it does not protect "speech that threatens real harm." *Id.* at 487-88. Jubert also was charged with threatening, harassing, and intimidating his victims. *Id.* at 488. The Fifth Circuit determined that Section 2261A(2) was neither overbroad nor unconstitutional as applied to Jubert.

Like Jubert, the Defendant here claims Counts Six and Seven violate his First Amendment rights in that these counts charge speech rather than conduct. ECF. 43 at 26. *Jubert,* 139 F.4th at 490. While recognizing the government may not restrict speech simply "because of its message, its ideas, its subject matter, or its content," *citing Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002), the Fifth Circuit pointed out that the First Amendment does not protect true threats. *Jubert,* 139 F.4th at 490. The *Jubert* Court, *id.* quoting *Counterman,* 60 U.S. at 66, 74, reiterated "[t]rue threats are serious expressions conveying that a speaker means to commit an act of unlawful violence." "True threats subject individuals to fear of violence and to the many kinds of disruption that fear engenders." *Jubert,* 139 F.4th at 490 quoting *Counterman*, 600 U.S. at 74, citing *Elonis v. United States*, 575 U.S. 723, 733 (2015). "Speech is a true threat and therefore unprotected if an objectively reasonable person would interpret the speech as a serious expression of an intent to cause a present or future harm." *Jubert,* 139 F.4th at 490. "True threats are unprotected because they have relatively low value and restricting them 'protects individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur.'" *Id.* In *Jubert,* the Court determined that even without deciding whether Section 2261A(2)(B) targeted Jubert's speech, Jubert's speech constituted true threats and therefore his as-applied challenge fails. *Id.* at 491.

The Fifth Circuit also held that Section 2261A(2) was sufficiently limited and not overbroad. *Id.* at 493. "It target conduct, not commentary. It punishes actions, not viewpoints. And it does so within well-established constitutional bounds." *Id.* at 493-94. The statute only applies to "a course of conduct"—using a facility of interstate commerce at least twice. *Id.* at 494. The Court pointed out that this limits the statutes reach and excludes isolated statements and accidental

communication. *Id.* And the statute focuses "on persistent behavior aimed at 'another person.'" *Id.* The *Jubert* court, citing *United States v. Williams*, 553 U.S. 285, 292 (2008), stated that Section 2261A(2) did not impermissibly prohibit "a substantial amount of protected speech judged in relation to the statute's plainly legitimate sweep." *Id.* Further, the Court held that "the result element, *substantial emotional distress,* also does not render the statute overbroad. *Id.* Recognizing that the First Amendment protects even hurtful speech on public issues to ensure not stifling public debate, quoting *Snyder v. Phelps,* 562, U.S. 443, 461 (2011), the First Amendment

> does not protect intimidation. "Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." *Black*, 538 U.S. at 360, 123 S.Ct. 1536; *see also NAACP. v. Claiborne Hardware Co.*, 458 U.S. 886, 916, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982) ("The First Amendment does not protect violence.").

*Id.* at 494-95. The Fifth Circuit held that the statute's mens rea element, that the defendant must act with intent to harass or intimidate, also limits the statute's scope. *Id.* at 495. This mens rea requirement "reinforces that this is not a statute about expression; it is a statute about purposeful abuse" and a "buttress against insidious conduct aimed at intimidating and harassing 'another person.'" *Id.*

None of the cases cited by the Defendant go against the Supreme Courts longstanding principle, even in the political speech context, that true threats are not protected by the First Amendment. *See e.g., RAV v. City of St. Paul*, 505 U.S. 377, 388 (1992) (Threats of violence against public officials) citing *Watts v. United States,* 394 U.S. 705, 707 (1969);  *Boos v. Barry,* 485 U.S. 312, 331 (1988) (When peaceful protests turn violent, First Amendment protections no

longer apply); *Chaplinsky v. New Hampshire,* 315 U.S. 568, 573 (1942) (Fighting words including threats not protected by the First Amendment).

The Fifth Circuit Pattern jury instruction includes all of the necessary elements required for harassment and intimidation cases as determined by the Supreme Court in *Counterman* and the Fifth Circuit in *Jubert.*

**Count Six**

On or about August 11, 2025, the Defendant left the following messages at the office of a U.S. Senator John Cornyn of Texas:

> Voicemail 1 – Yeah, hey, yeah. Just wanted to leave a message for the senator and his staff. I'm calling in to encourage you all to kill yourselves. You're all fucking Nazi scum. You're all disgusting and making the country worse. You've never put America first. You've never put anyone first, I promise you, everyone who has to deal with you in your life, Senator and staff, everybody who your own family, they fucking hate you, so you should kill yourself. You should just fucking end it, because no one will miss you. No one's gonna care. You're fucking Nazi scum. You're a piece of shit. You work for Republican Okay, so just do me a favor, all of you, and pass this to the senator. And you know, make sure you tell the senator he should kill himself before you kill yourself. We need to make sure that message gets there, so just calling in letting you know you should fucking die you're all Nazi scum and do the world a favor and make America great again by killing yourself.

> Voicemail 2 – I'll call every fucking day you're a public servant. There is no such thing as harassment. I'll call every fucking day and encourage you not see fucks to kill yourselves until John Cornyn or one of his staff commits suicide. I will not rest. I'll call you every fucking day telling you to kill yourself.

> Voicemail 3 – This message is for both John Cornyn and his staff members. You should all fucking kill yourselves, especially John Cornyn, put a fucking gun in your mouth and scream as you pull the trigger. I didn't call yesterday because I was sick, but guess what? I'm gonna call every fucking day, and I'm gonna tell you fucking Nazi scum, fucks to kill yourselves until one of you commits suicide. Fucking kill yourself, you nutsy pieces of shit.

The Defendant, using multiple interstate phone calls as a course of conduct, clearly demonstrated he wanted to harass and intimidate the victim by voicemails saying he would call every day until Senator Cornyn or one of his staff killed themselves. Like Jubert admitted in his plea agreement that he intended to harass and intimidate his victims, *Jubert,* 139 F.4th at 492, the Defendant admitted in his voicemail he knew he was harassing these people and claimed that nothing he did would qualify as harassment because they were public servants and that he would continue to do so until one of them committed suicide. There is nothing about the Defendant's statement that is protected First Amendment political discourse.

## Count Seven

On August 26, 2025, after speaking to the FBI, the Defendant again threatened and harassed Mr. Scharf by leaving a series of five voicemails in retaliation for the victim reporting the Defendant's first death threat to the FBI. The first voicemail is charged in Count Two, the remaining four voicemails constitute Count Seven. The second voicemail stated: "What's it like being such a little fucking pussy bitch? If I saw your ass I'd knock you the fuck out, bro." The third voicemail stated: "You want to do something good for this world? Kill yourself, man. You want to…hide behind people like the FBI? Put a gun in your mouth. I promise you, nobody loves you. Nobody gives a shit about you. Improve the lives of every American by fucking killing yourself." The fourth voicemail stated: "Yeah, I'll call you every fucking day, multiple times a day, tell you to kill yourself. That fucking FBI shit, nothing's going to happen. Kill yourself. There's nothing they can do... Okay, I can't make direct threats against you. Kill yourself." The fifth voicemail stated: "I'll leave a million messages. Don't give a fuck. I won't make no threats; I'll just tell you you're a worthless piece of shit and you should put a fucking gun in your mouth…Kill yourself. It'll be the only good you've ever done for the world."

Similar to Count Six, the Defendant, using multiple interstate phone calls as a course of conduct, clearly demonstrated he wanted to harass and intimidate the victim by voicemails threatening to assault the victim, encouraging the victim to kill himself, and telling the victim he would continue leaving "millions" of messages telling the victim to kill himself. The Defendant demonstrated his knowledge of the illegality of making threats claiming he could continue to harass the victim because the FBI was not going to do anything if he did not make threats.

The Defendant's conduct as charged in Counts Six and Seven was not protected by the First Amendment and Section 2261A(2) is not unconstitutional as applied.

## CONCLUSION

WHEREFORE, the Defendant's Motion to Dismiss Superseding Indictment is without merit and should be denied.

Respectfully submitted,

JUSTIN R, SIMMONS
UNITED STATES ATTORNEY


/s/                              
MARK T. ROOMBERG
Assistant United States Attorney
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
Ph:     (210) 384-7179
Fax:    (210) 384-7028
Email: mark.roomberg@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 23, 2026, a copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

Charly Herring
Jose Falla-Gonzalez
Federal Public Defenders Office
Attorneys for Defendant

By:     /s/_____
        Mark T. Roomberg
        Assistant United States Attorney

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 1:25-CR-00393 (RP)** |
| | ) | |
| **THOMAS AUSTRIA CROUSE** | ) | |
| | ) | |

## <u>O R D E R</u>

The Court, having considered the Defendant's Motion to Dismiss Superseding Indictment

and the Response of the United States, the Court hereby Orders that the Defendant's Motion to

Dismiss Superseding Indictment be DENIED/GRANTED.


Signed on the _____ day of _____, 2026.


_____
HONORABLE ROBERT PITMAN
United States District Judge