**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **NO.   A-25-CR-00393** |
| | § | |
| **THOMAS AUSTRIA CROUSE** | § | |

**DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE**
**TO HIS MOTION TO DISMISS**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE ROBERT PITMAN:

Mr. Crouse respectfully submits this reply to the government's response (ECF Doc. No. 54) to his Motion to Dismiss (ECF Doc. No. 43).

The indictment must be dismissed for three reasons. First, because each count seeks to prosecute Mr. Crouse based on constitutionally protected speech under the First Amendment. Second, counts one through five must be dismissed because § 875(c) is unconstitutionally vague and overbroad. Third, counts six and seven must be dismissed because § 2261A(2) is unconstitutional as applied to Mr. Crouse.

As to Mr. Crouse's first argument, the government argues that Mr. Crouse's statements are true threats, and therefore, not protected by the First Amendment. The government also argues that the determination of whether the charged statements are a true threat must be decided by a jury. This argument fails for two reasons. First, Mr. Crouse's statements concerned political figures or were matters of public concern and are not serious expressions of an intent to commit violence. Second, as the Fifth Circuit has explained, district courts serve a gatekeeping function and may dismiss an indictment pretrial where the government fails to allege a true threat as a matter of law.

1

Finally, with respect to Mr. Crouse's assertion that § 2261A(2) is unconstitutional as applied to him, the government argues that the statements alleged in counts six and seven are true threats, and, therefore, § 2261A(2) is not unconstitutional as applied. This argument fails because § 2261A(2) is a content-based restriction on speech, and Mr. Crouse's statements are not true threats.

For all these reasons, the Court should grant the motion to dismiss.

## I.      Counts One through Five must be dismissed.

Because none of the statements charged in Counts One through Five contain, as a matter of law, a true threat, the Court must dismiss the first five counts of the indictment.

True threats are serious expressions of the speaker's intent to commit an act of unlawful violence. *Counterman v. Colorado*, 600 U.S. 66, 74 (2023). The inquiry of whether a statement is a true threat is twofold: first whether a reasonable person would perceive the statement as threatening, and second whether the speaker was subjectively aware of its threatening nature. *Id.* at 72-73; *see also United States v. Jubert*, 139 F.4th 484, 491 (5th Cir. 2025).

### A.  This Court is permitted to determine whether the charged statements are true threat as a matter of law.

The bulk of the government's argument concerning Counts One through Five concerns whether a district court can determine if statements are true threats as a matter of law and dismiss an indictment under Rule 12. ECF Doc. No. 54 at pg. 3-8, 13-17. The government argues that whether the statements alleged in the indictment are true threats is an issue for the jury. *Id.* The determination of whether a statement constitutes a true threat is *generally* an issue of fact for the jury. *See United States v. Daughenbaugh*, 49 F.3d 171, 173 (5th Cir. 1995); *see also, e.g., United States v. Stock*, 728 F.3d 287, 298 (3d Cir. 2013) ("*In the usual case*, whether a communication constitutes a threat or a true threat is a matter to be decided by the trier of fact.") (emphasis added).

But not always. "[A]court may conclude that a communication does not constitute a threat as a matter of law in certain cases." *Stock*, 728 F.3d at 297. And "[i]t is not unprecedented for a court to conclude that a communication does not legally qualify as a … true threat." *Id.* Indeed, that is exactly what the Supreme Court did in *Watts*. There, the Court reversed the defendant's conviction because, as a matter of law, the defendant's statement was mere "political hyperbole" that could not reasonably be interpreted as a true threat. *United States v. Watts*, 394 U.S. 705, 708 (1969).

The Fifth Circuit also has held that a district court may determine that a "statement is not a true threat as a matter of law." *United States v. O'Dwyer*, 443 F. App'x 18, 20 (5th Cir. 2011). In *O'Dwyer*, the Fifth Circuit upheld a district court's granting of a motion to dismiss where the charged statement was not a true threat as a matter of law. *Id.*; *see also United States v. O'Dwyer*, No. CRIM.10-034, 2010 WL 2606657, at *3 (E.D. La. June 24, 2010), *aff'd*, 443 F. App'x 18 (5th Cir. 2011). Likewise, other circuits have also held that charged statements are not true threats as a matter of law. *See, e.g., United States v. Lincoln*, 403 F.3d 703, 706–08 (9th Cir. 2005) (holding that letter written by defendant "did not constitute a true threat" as a matter of law); *United States v. Landham*, 251 F.3d 1072, 1082 (6th Cir. 2001) (holding that "the indictment failed, as a matter of law, to allege a violation of § 875(c)" because alleged statement was not a true threat).

Thus, "a court may properly dismiss an indictment as a matter of law if it concludes that no reasonable jury could find that the alleged communication constitutes a … true threat." *Stock*, 728 F.3d at 298; *see Landham*, 251 F.3d at 1082-83 (holding the district court erred in denying the defendant's motion to dismiss because indictment failed, *as a matter of law,* to allege a violation of § 875(c)); *United States v. Viefhaus*, 168 F.3d 392, 397 (10th Cir. 1999) ("[i]f there is no question that a defendant's speech is protected by the First Amendment, the court may dismiss the

charge as a matter of law"); *United States v. Baker*, 890 F. Supp. 1375, 1385 (E.D. Mich. 1995)
("Whether or not a prosecution under § 875(c) encroaches on constitutionally protected speech is
a question appropriately decided by the Court as a threshold matter"). That is the precise outcome
the Fifth Circuit endorsed in *O'Dwyer*, when the Court affirmed the dismissal of an indictment
because "no reasonable jury could find that [the defendant's] communication constitutes a true
threat." 443 F. App'x at 20.

> The government attempts to distinguish this case from *O'Dwyer*, arguing:

> That leaves the Defendant with the Fifth Circuit's unpublished decision in *United States v.
> O'Dwyer*, 443 F. App'x 18 (5th Cir. 2011). But the Defendant makes no effort to explain
> how the published decisions O'Dwyer cited—both of which affirmed denials of motions
> for acquittal at trial—support using Rule 12 to forecast from a pretrial record what a jury
> might find. *See id.* at 20 (citing *Daughenbaugh*, 49 F.3d 171, and *Morales*, 272 F.3d 284).
> Even under that approach, the Defendant does not explain how his threats to murder these
> public officials and some of their family members are like the "vague speculation about
> becoming homicidal" at issue in *O'Dwyer*. *Jubert*, 139 F.4th at 491. Thus, even if *O'Dwyer*
> should have been resolved pretrial as a matter of law, this case should not be.

ECF Doc. No 54 at pg. 16-17.

> What the government ignores is that *O'Dwyer* stands for the simple conclusion that
whether or not a prosecution encroaches on constitutionally protected speech can be determined
by a district court in a Rule 12 motion. District courts play this important gatekeeping role by
dismissing charges when the alleged speech is not a true threat as a matter of law. For example, a
district court in this circuit dismissed a cyberstalking charge because, "when read in context," the
defendant's "Facebook posts [were] not 'true threats.'" *United States v. Cook*, 472 F. Supp. 3d
326, 335 (N.D. Miss. 2020).

> Such a gatekeeping function is not inconsistent with Rule 12. If a pretrial motion presents
a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the
motion. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005). The government seems to argue

4

that there are disputed facts. ECF Doc. No. 54 at pg. 17. But the government does not identify any disputed facts.

Mr. Crouse's motion relies on the statements and the context in which they were made as alleged in the superseding indictment. There is no dispute as to the content of the statements, the forums in which they were made, or to whom they were made. Nor could the government point to any relevant factual dispute. That is because the "existence of a threat depends not on the mental state of the author, but on what the statement conveys to the person on the other end." *Counterman*, 600 U.S. at 74. Context is key in determining whether a statement is a "true threat" and the relevant "context" of a statement includes aspects that a listener is actually aware of: "the speaker's tone, the audience, the medium for the communication, and the broader exchange in which the statement occurs." *Id.* at 114 (Barrett, J., dissenting). The issue is not what evidence may or may not be admissible at trial. Rather, the issue is whether the statements and the context in which they were alleged in the indictment are sufficient to establish true threats. They are not.

### B.  The statements in Counts One through Five are constitutionally protected speech.

None of the statements alleged in the indictment are true threats because Mr. Crouse's comments are protected speech under the First Amendment. Each of the statements are entitled to heightened First Amendment protections because they are statements directed at public figures expressing disagreement on matters of public concern. *See Snyder v. Phelps*, 562 U.S. 443, 458 (2011) (holding that speech that is made in a "public place on a matter of public concern… is entitled to 'special protection' under the First Amendment"). "[C]riticism of public officials lies at the very core of speech protected by the First Amendment." *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002) (citations omitted).

**1.  *The statement in Count One left on the voicemail of the White House Staff Secretary is not a true threat because it discusses a matter of public concern.***

The voicemail at issue is protected political speech. The statement references executive orders that President Trump signed and the staff secretary's role in those executive orders becoming law. The government argues that there is nothing "remotely political" about Mr. Crouse's statement, but, as the government recognizes, the statement explicitly references recent executive orders. ECF Doc. No. 54 at pg. 8.

While what constitutes "matters of public concern" is not well defined, "speech is of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community'" or that "is a subject of legitimate news interest" — *i.e.*, "a subject of general interest and of value and concern to the public." *Snyder*, 562 U.S. at 453 (first quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983), and then quoting *San Diego v. Roe*, 543 U.S. 77, 83-84 (2004)). Crass or even violent speech can still be speech on a matter of public concern. *Snyder* itself is a clear example of this. 562 U.S. at 448. A religious group protested a soldier's private funeral with signs saying things like, "Thank God for IEDs," "Thank God for Dead Soldiers," and "Thank God for 9/11." *Id.* The Supreme Court held the First Amendment protected the group's speech because it touched on "matters of public import," including "the political and moral conduct of the United States and its citizens." *Id.* at 454. As the Court held, "[t]he arguably inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern." *Id.* at 443.

Likewise, the Fifth Circuit has held that "where speech 'complained of misconduct within the police department', it should be classified as speech addressing a matter of public concern." *Thompson v. City of Starkville, Miss.*, 901 F.2d 456, 463 (5th Cir. 1990) (*quoting Brawner v. City of Richardson*, 855 F.2d 187, 192 (5th Cir. 1988)). District courts within the Fifth Circuit have

held that "speech complaining of misconduct within [a public entity] is speech addressing a matter of public concern." *Scott v. Corrections Corp. of America*, 2014 WL 4988383, at *9 (N.D. Miss. 2014). And a district court held that Facebook posts discussing "the Mississippi Bureau of Narcotics, the officers of the Mississippi Bureau of Narcotics, the publicly elected state court judge, the publicly elected District Attorney, and the public officials employed by the District Attorney," that contained "phrases like 'and god willing I'm going to take them out,'" were matters of public concern. *United States v. Cook*, 472 F. Supp. 3d 326, 335-36 (N.D. Miss. 2020).

Mr. Crouse's statements are on matters of public concern. The voicemail explicitly references recent executive orders, and the voicemail was left for a person involved in the signing of those executive orders. Mr. Crouse's statements are entitled to special protection under the First Amendment.

Additionally, the statement is not a true threat because it does not convey a real possibility that violence will follow. *Counterman*, 600 U.S. at 74. To be a true threat, the statement "*in its context*" must reasonably "create apprehension that its originator will act according to its tenor." *United States v. Morales*, 272 F.3d 284, 287 (5th Cir. 2001) (quoting *United States v. Myers,* 104 F.3d 76, 79 (5th Cir.1997)). The government recognizes that "[t]he statement 'If I see you, I will kill you,' is expressly conditional," but argues that "a reasonable person with a chance of seeing the speaker would regard it as a threat."[1] ECF Doc. No. 54 at pg. 9. But there is nothing *in the context* of the statement that would allow a reasonable person to believe he had a chance of seeing the speaker. To be a true threat the alleged statement must have an "immediacy, or clarity of purpose." *Shackelford v. Shirley*, 948 F.2d 935, 939 (5th Cir. 1991). The message lacks any

---

[1] Though the government misquotes the voicemail charged in count one, the defense agrees with the characterization of that language as conditional.

specificity as to the place, time, or method of the purported encounter that is necessary to convey a real possibility that violence will follow.

The government's reliance on *United States v. Myers* is unavailing. ECF Doc. No. 54 at pg. 9. The government argues that "[t]he Fifth Circuit's decision in *Myers* disproves his notion that an objectively reasonable person cannot view any conditional statement as expressing a serious intent to cause harm." *Id. Myers* does not discuss the First Amendment. *United States v. Myers*, 104 F.3d 76 (5th Cir. 1997). The defendant in *Myers* argued that statement alleged as the threat in both counts of his indictment was the same statement repeated two days apart, rendering his indictment duplicative. *Id.* at 79. The Court found that repeating the threatening message at a separate time met the requirements of § 875(c). *Id.* The *Myers* court at no point discussed the First Amendment or conditional statements. *Myers* does not inform the analysis here.

Finally, the government argues "the alarm of the victim in determining if this was a true threat suitable for Rule 12 purely legal resolution as the Fifth Circuit does has repeatedly held that fearful reactions are probative of whether an objectively reasonable person would interpret a statement as a threat." ECF Doc. No. 54 at pg. 10. The reactions of individual recipients are irrelevant to the first prong of the true threat analysis, which asks "whether a *reasonable person* would perceive the statement as threatening." *Jubert*, 139 F.4th at 491. In applying this type of objective standard, a "particular individual's response" is irrelevant. *Michigan v. Chesternut*, 486 U.S. 567, 574 (1988); *Books v. Elkhart County,* 401 F.3d 857, 867 (7th Cir. 2005) (distinguishing an "objective, reasonable person" from "the hypersensitive or easily offended").

Simply because a person who heard the statement was alarmed by the statement does not make the statement a true threat as a matter of law. Even protected speech may "alarm the addressee." 16A AM. JUR. 2d Constitutional Law § 526 (explaining that the term "true threats"

"excludes the kind of hyperbole, rhetorical excesses, and impotent expressions of anger or frustration that in some contexts can be privileged even if they alarm the addressee"); *Counterman*, 600 U.S. at 87 (Sotomayor, J., concurring) ("First Amendment vigilance is especially important when speech is disturbing, frightening, or painful because the undesirability of such speech will place a heavy thumb in favor of silencing it."). None of the cases cited by the government establish that alarm by the recipient renders the statement a true threat as a matter of law.

For example, in *Jubert*, the Court noted that the defendant's targeted actions showed *intent*, and that the "victims' responses confirm[ed] that point." 139 F.4th at 491. Thus, the Court considered evidence of the victim's alarm not at the first step of the analysis, but at the second where the government must establish that the speaker was subjectively aware of the statement's threatening nature. *Id.*

Context is critical when determining whether a statement is constitutionally protected speech or a "true threat." *Bailey v. Iles*, 87 F.4th 275, 285 (5th Cir. 2023) (citing *Watts*, 394 U.S. at 708). To be a "true threat" the statement must "on its face and in the circumstances in which it is made" be so "unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution." *United States v. Kelner*, 534 F.2d 1020, 1027 (2d Cir. 1976). Because a reasonable person would not perceive Mr. Crouse's statement as threatening, it is not a true threat as a matter of law and Count One must be dismissed.

### 2. *The statement in Count Two is not a true threat because it is hypothetical and conditional.*

The Fifth Circuit has held that "hypothetical and conditional" statements are not true threats as a matter of law. *O'Dwyer*, 443 F. App'x at 20. The statement charged in Count Two is expressly conditional—if Mr. Crouse sees Mr. Scharf in public, he will knock him out.

9

The government argues that this is a "blatant true threat" based on the "plain reading of the statement" but does not address the conditional language of the statement. ECF Doc. No. 54 at pg. 11. The government acknowledges that "'[t]rue threats are 'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence' *Counterman*, 600 U.S. at 74," but does not explain how this statement conveys to a reasonable person that Mr. Crouse intended to commit an unlawful act of violence. *Id.*

This statement is both expressly conditional and political hyperbole. *See Watts*, 394 U.S. at 706.[2] The message was part of a larger string of messages Mr. Crouse left expressing his political objection to the Big Beautiful Bill and was expressly conditioned on an event that no reasonable person could expect to occur. Indeed, the context of the statement—made the day Mr. Crouse was interviewed by the FBI in Texas—could not convey to a reasonable person that there was a chance that he would see Mr. Scharf in public in Washington DC. The statement lacks the required "immediacy, or clarity of purpose" and is not a true threat. *Shackelford*, 948 F.2d at 939.

---

[2] The government claims that the defense "truncated [a] quotation from *Watts*, ECF. 43 at 12, [which] leaves off that the statement there 'was expressly made conditional upon an event—induction into the Armed Forces—*which [the defendant] vowed would never occur*.' 394 U.S. at 707 (emphasis added)." ECF Doc. No. 54 at pg. 11. But the quote used by the government is not the language of the alleged true threat at issue in *Watts*. The full statement of the alleged threat made by the defendant in *Watts* was:

> "They always holler at us to get an education. And now I have already received my draft classification as 1—A and I have got to report for my physical this Monday coming. I am not going. If they ever make me carry a rifle the first man I want to get in my sights is L.B.J. They are not going to make me kill my black brothers."

*Watts*, 394 U.S. at 706.
The language the government claims was truncated from that statement was never a part of the statement. It was a portion of trial counsel's argument for a judgment of acquittal:

> "At the close of the Government's case, petitioner's trial counsel moved for a judgment of acquittal. He contended that there was 'absolutely no evidence on the basis of which the jury would be entitled to find that (petitioner) made a threat against the life of the President.' He stressed the fact that petitioner's statement was made during a political debate, that it was expressly made conditional upon an event—induction into the Armed Forces—which petitioner vowed would never occur, and that both petitioner and the crowd laughed after the statement was made. He concluded, 'Now actually what happened here in all this was a kind of very crude offensive method of stating a political opposition to the President. What he was saying, he says, I don't want to shoot black people because I don't consider them my enemy, and if they put a rifle in my hand it is the people that put the rifle in my hand, as symbolized by the President, who are my real enemy.'"

*Watts*, 394 U.S. at 706–07.

### 3. The context of the statement charged in Count Three—a post on X that tagged the Secretary of Homeland Security's X account—establishes that the statement was not a true threat.

Count Three charges a post on X that tagged the Secretary of Homeland Security's public account. The government fails to address the context of the statement. *See* ECF Doc. No. 54 at pg. 11-12. Instead, the government argues "[w]hile there is little doubt this statement is a true threat, this remains a factual dispute left to the jury to determine if, 'an objectively reasonable person would interpret the speech as a serious expression of an intent to cause a present or future harm.'"

But there is no factual dispute. There is no dispute as to the content of the statement, which was included in the superseding indictment. ECF Doc. No. 28. Nor is there any dispute as to the context of the statement, which was posted publicly on a social media account. Whether an objectively reasonable person would interpret the speech as a serious expression of an intent to cause harm is not a factual dispute. It's a legal question. *See Chesternut*, 486 U.S. at 574 (noting, in the context of the Fourth Amendment, that the reasonable person "test's objective standard—looking to the reasonable man's interpretation of the conduct in question" "ensures that the scope of [the] protection does not vary with the state of mind of the particular individual"); *see also Watts*, 394 U.S. at 708 (holding as a matter of law that the defendant's statement was not a true threat).

The only question is whether Mr. Crouse's statement on social media tagging the Secretary of Homeland Security is a true threat as a matter of law. The government ignores the well-recognized fact that social media is the central forum for the exchange of political views. *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017). Imposing criminal liability for "public[ly] address[ed] [comments] … contain[ing] highly charged political rhetoric" requires "extreme care." *See N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 927 (1982); *see also United States v. White*, 670 F.3d 489, 513 (4th Cir. 2012), *abrogated on other grounds by Elonis*

11

*v. United States*, 575 U.S. 723 (2015) (holding that statements "directed to others" on a public website rather than to an intended victim weigh against finding statements constituted true threat); *Counterman v. Colorado*, 600 U.S. 66, 87 (2023) (Sotomayor, J., concurring) ("Different corners of the internet have considerably different norms around appropriate speech."). The X post was made in a public place on a matter of public concern and is therefore entitled to heightened protection under the First Amendment.

> **4.    The statements in Counts Four and Five are not true threats because they are political statements, do not convey a real possibility that violence will follow, and are, at most, conditional.**

These statements are expressly political. As the government recognizes, both statements reference one of the most ubiquitous political phrases of the time, "Make America Great Again," and Count Five explicitly references a recent bill.[3] *See* ECF Doc. No. 54 at pg. 12. Indeed, it is difficult to imagine a more political expression than one referencing President Trump's political campaign slogan and a specific piece of hallmark legislation. The fact that a statement may be "inappropriate or controversial" is irrelevant to the question of whether it is of a matter of public concern. *Snyder*, 562 U.S. at 453. These statements are, therefore, entitled to "special protection under the First Amendment." *Id.* at 458.

Additionally, a true threat must be "unequivocal, unconditional, immediate and specific as to the person threatened." *Kelner*, 534 F.2d at 1027. As the government recognizes, the statements urge the recipients to do something "which no rational person would do": kill themselves to "Make

---

[3] The government states that "the latter threat mentions an unnamed bill." ECF Doc. No. 54 at pg. 12. But as the government corrects in its Amended Response, the voicemail was left on July 3, 2025, not July 18, 2025 (as charged in the Superseding Indictment). July 3, 2025, was the day The Big Beautiful Bill passed the House before being signed into law by President Trump on July 4, 2025. The reference to "a bill that bankrupts half your citizens" left on the date the bill was passed by Congress would have been obvious to any listener in a senator's office.

America Great Again." *See* ECF Doc. No. 54 at pg. 11-12. This is clearly "hyperbole" and taken in context does not convey any real possibility that violence will follow.

Mr. Crouse's statements, like the numerous statements cited in Mr. Crouse's Motion to Dismiss made by public officials, were "crude" and "offensive." *See Watts*, 394 U.S. at 707. They are also protected by the First Amendment because they are not true threats.

### C.  Alternatively, the Court should dismiss Counts One through Five because Section 875(c) is unconstitutionally vague and overbroad.

The government argues that "Section 875(c) clearly puts an individual on notice that it is illegal for anyone to transmit threats in interstate or foreign commerce to injure the person of another." ECF No. 54 at pg. 17. The government suggests that the jury instructions provide this notice and that the clarification of the statute's *mens rea* requirement in *Counterman* makes this clear. *Id.* at pg. 17-18. As Mr. Crouse argued in his motion to dismiss, the Supreme Court's interpretation of the scienter requirement in *Counterman* does not remedy the fact that the statute itself provides no such notice. *See* Motion to Dismiss, ECF No. 43 at pg. 21-22. Section 875(c) is unconstitutionally vague because it fails to provide a person of ordinary intelligence fair notice of what speech is prohibited and it is overbroad because it allows the prosecution of pure speech about political subjects. *Id.* at pg. 21-23.

### II.  Section 2261A(2) is unconstitutional as applied to Mr. Crouse because criminalization of his speech would amount to unconstitutional content-based restriction of speech.

The government seems to confuse Mr. Crouse's as-applied challenge to § 2261A(2) with a facial challenge to the statute, an argument which Mr. Crouse does not make. *See* ECF Doc. No. 54 at pg. 23-24. Mr. Crouse asserts that § 2261A(2) is unconstitutional *as applied* to him because it criminalizes his pure speech that is protected by the First Amendment.

It is undeniable that Mr. Crouse is being prosecuted for his pure speech. Counts Six and Seven turn on what he said, not how he said it. Thus, § 2261A(2) imposes a content-based

restriction on speech. *See Jubert*, 139 F.4th at 491 (assuming without deciding that § 2261A(2)(B), as enforced there, targeted defendant's speech). The government makes no substantial argument that Mr. Crouse is not being prosecuted based on his pure speech. *See* ECF Doc. No. 54 at pg. 21-25. While the government quotes portions of the Fifth Circuit's decision in *Jubert* stating the statute applies to "a course of conduct," that portion of the decision is addressing the *facial* challenge to § 2261A(2). *See Jubert*, 139 F.4th 492-95. Mr. Crouse does not make a facial challenge, only an as-applied challenge. Like the defendant in *Jubert*, Mr. Crouse is being prosecuted based on the content of his speech.

Because the portion of § 2261A(2) relied on in the Superseding Indictment criminalizes speech on the basis of whether that speech is emotionally distressing to Senator John Cornyn and Mr. Scharf, *see* ECF Doc. No. 28, it is a content-based restriction on speech. "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). Further, content-based restrictions on protected speech must survive strict scrutiny. *See United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000). The government cites no compelling interest the statute serves, nor makes any argument that the statute is narrowly tailored. The government cannot criminalize speech simply "because the speech in question may have an adverse emotional impact on the audience." *Boos v. Barry*, 485 U.S. 312, 322 (1988) (cleaned up).

Finally, § 2261A(2) is unconstitutional as applied to Mr. Crouse because his statements are protected by the First Amendment. To be a true threat, and therefore unprotected by the First Amendment, the statement must "create apprehension that its *originator* will act according to its tenor." *Morales*, 272 F.3d at 287 (5th Cir. 2001) (emphasis added). None of the voicemails charged

in Counts Six and Seven threaten anything. Mr. Crouse does not state he will take any action. The statements are therefore not "true threats," but rather constitutionally protected speech.

The government asserts:

> None of the cases cited by the Defendant go against the Supreme Courts longstanding principle, even in the political speech context, that true threats are not protected by the First Amendment. *See e.g., RAV v. City of St. Paul*, 505 U.S. 377, 388 (1992) (Threats of violence against public officials) citing *Watts v. United States*, 394 U.S. 705, 707 (1969); *Boos v. Barry*, 485 U.S. 312, 331 (1988) (When peaceful protests turn violent, First Amendment protections no longer apply); *Chaplinsky v. New Hampshire*, 315 U.S. 568, 573 (1942) (Fighting words including threats not protected by the First Amendment).

ECF Doc. No. 54 at pg. 24-25. But the government does not argue that the statements in Counts Six and Seven are true threats. Nor could it. Unlike the cases cited by the government which involved threats of violence, actual violence, and fighting words, Mr. Crouse made no such statements.

Finally, the government argues that Mr. Crouse somehow admitted the voicemails were harassing in nature, and therefore his statements are not protected by the First Amendment. *See* ECF Doc. No. 54 at pg. 26 ("Like Jubert admitted in his plea agreement that he intended to harass and intimidate his victims…the Defendant admitted in his voicemail he knew he was harassing these people and claimed that nothing he did would qualify as harassment because they were public servants and that he would continue to do so until one of them committed suicide) and pg. 27 ("The Defendant demonstrated his knowledge of the illegality of making threats claiming he could continue to harass the victim because the FBI was not going to do anything if he did not make threats."). This is both a misstatement of the facts as well as the law.

First, Mr. Crouse did not admit to harassing or threatening the recipients of the voicemails. In a voicemail to Senator Cornyn, Mr. Crouse stated "I'll call every fucking day you're a public servant. There is no such thing as harassment." And in a message to Mr. Scharf, Mr. Crouse stated "That fucking FBI shit, nothing's going to happen." ECF Doc. No. 54 at pg. 25-26. If anything,

15

these statements evidence that Mr. Crouse believed his actions to be *lawful*, not illegal. Second, the government's reliance on *Jubert* is misplaced. In *Jubert*, the defendant admitted in his plea agreement that he made the charged statements with the intent to intimidate or harass the recipient. 139 F.4th at 491. Mr. Crouse made no such admission. *Jubert* is not relevant to whether the statements at issue here are true threats. *Jubert* involved statements directed at a private individual. *Id.* Mr. Crouse's statements were addressed to public officials.

Counts Six and Seven seek to punish Mr. Crouse criminally for the content of his speech. Because his speech was on a matter of public concern and because his speech did not contain any "true threats," his speech is protected by the First Amendment. Section 2261A(2) is, therefore, unconstitutional as applied to Mr. Crouse, and he requests the Court dismiss Counts Six and Seven of the Indictment.

### III.    Conclusion

For the foregoing reasons, Mr. Crouse respectfully requests that the Court grant his motion to dismiss the indictment (ECF No. 43).

Respectfully submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender

_____
/s/ CHARLOTTE A. HERRING
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)

TX Bar Number: 24064026

_____
/s/ JOSE I. GONZALEZ-FALLA
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
Bar Number: Texas 08135700

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of January 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing via email to the following:

Mark Roomberg
United States Attorney's Office
601 Northwest Loop 410
San Antonio, TX 78216

_____
/s/ CHARLOTTE A. HERRING

17